Okay, the first argued case this morning is the Software Rights Archive v. Facebook, Inc. and others. Mr. Hardy, proceed. And recognizing that there are three separate cases, we'll try not to repeat ourselves as we go on with the other cases. So concentrate here on the most critical point. Thank you, Your Honor. May it please the Court? The Board's decision is clearly erroneous because it fails to provide an explanation or any substantial evidence to demonstrate a motivation to use indirect relationships to search in a specific claimed arrangement in view of the negative experimental results found in the Fox Papers themselves. Now, the argument I'm going to be talking about here today is referred to in our briefs as the claimed arrangement argument. I think it's very important to focus on because I think that this particular argument resolves all disputes with respect to SRA's appeals. Now, what I'm referring to specifically is found on page 10 of the SRA's reply brief, and I would like to look at the claim elements, and if we could, I'd like to direct the Court to go to that page. Now, as we look for this, we get to the claim. I want to note that we're going to talk about Claim 26 of the 352 patent, but the structure and the issues that we're going to discuss right now are found throughout all claims that SRA's appealing, including those in 494 and 571. What we have on page 10 is the last five elements of Claim 26 of the 352 patent set forth. What this claim structure requires is, first, that a person create a first numerical representation of direct relationships in the database and store that for use in computerized searching. Importantly, after one has created this numerical representation of direct relationships and made it available for searching, the method requires three additional steps. First, conduct an analysis of indirect relationships. Second, embody it in a second numerical representation. Third, use that to search. In order to be motivated to perform these five steps of this claim as arranged here in the claim, one must be motivated to use an analysis of indirect relationships to search, even though one has just created a first numerical representation of direct relationships and stored it for use in searching. This claim structure creates a fundamental, empirical, and quantitative question. The question is this. If an analysis of indirect relationships does not provide a benefit to searching, one would not be motivated to perform the last three steps of the claim given that they have a first numerical representation of direct relationships. Indeed, if the use of an analysis of indirect relationships harms search results versus just using the direct relationships you just created, then that would be a strong empirical teaching not to perform the last three steps of the claim. So it's important to understand that this is both quantitative and an empirical question, and that question is decisively answered in the Fox paper's experimental results themselves. If we turn to page 12 of SRI's reply brief, what I have here listed is a table with seven experimental results. These seven experimental results are the only seven experimental results found anywhere in the Fox papers directed to this empirical issue. It's the only seven experimental results where you can compare BC and CC, the only indirect relationships being tested in the combination, versus direct links and see the relative importance. And what we see uniformly, without exception, not one result to the contrary, is in all seven results, the use of an analysis of indirect relations through the use of analysis of indirect relationships to search, harm search results that one would obtain had they just used the first numerical representation to search. Consequently, based upon these experimental results, one would not perform these five steps as arranged. They would be effectively harming the search results they would have obtained had they just stopped after the first two steps. Because of this, this is a very strong empirical teaching not to perform the method. There's other statements in the Fox papers too, though, right? That's correct. I mean, there's several citations we could find right now through this thousand-page consolidated document that talk about how using a BC-CC combination seemed rather good, that there's some test behavior to come when BC and CC are combined with equal weighting. Sure. There's JA 5605, you know, preliminary tests indicate that extended vectors may significantly aid retrieval performance in a feedback environment. So, what it seems like the best you can do is characterize the Fox papers as a mixed bag of sorts. It says it has some experiments that didn't work out so well. Maybe that's limitations due to the database. Maybe it's due to the regression analysis. But in the end, Fox is still driving towards sounding, at least in various different places, optimistic about using these indirect citation relationships. And so, therefore, why would we say that this question of fact that the board arrived at, that there's no teaching away, is somehow, you know, lack substantial evidence, clearly erroneous, whatever you want to call it. Sure. And I'm glad you asked this question. I think this is the most important question that I'm going to respond to here today. Because what I'm going to show you is that none of those statements, not one of them, are directed to the fundamental empirical question of whether an indirect relationship can perform sufficiently or enough to justify its use after the method has already created a first numerical representation of direct relationships. None of those statements are directed to those questions. So let's look at what those statements actually were. We turn and flip the page to page 13 of my brief. Some of the statements, for example, BC is the best one to use, was one of the quotes they cited. This quote comes from the experiment of table 8.7, which is set forth on page 13 of the brief. Table 8.7 shows a 6% improvement against terms. But what it does not do is not direct it to the empirical question of whether the indirect relationships would show a benefit versus direct links, the specific step prior to creating the analysis of indirect relationships. And it's very important to understand that. The reason why is this test is from the ISI collection. And the ISI did not have direct relationships among the documents in it. What it was created from is source-sided pairs from outside the collection. And the result of that is no LN subvector was ever created for the ISI. So consequently, because there's no LN subvector, there's no testing of the indirect relationships against that subvector. So this test does not speak to the empirical question of the claimed arrangement argument they were making. Indirect relationships must show some kind of benefit to justify their use given the method specifically requires you to create a numerical representation of the direct relationships and store that for use in searching. And so one would not be motivated based upon this test to perform it. This is not substantial evidence. Substantial evidence is evidence that a reasonable mind would find adequate to support a conclusion. The fact that there's a 6% improvement against terms does not allow any inference that indirect relationships would, in fact, be better than direct links. And indeed, the only evidence anyone has to this are the seven test results that I showed you previously on page 12, which show in every single case, without exception, indirect relationships harm search results versus direct links. If the notion of using indirect citation relationships for querying databases for information retrieval was really such a poisonous failure, as you would have us believe, then why would Fox, who did all this work in 1983, go right back to the same well and drink from it 10 years later in the Fox and Vision paper? Okay, and the answer is he doesn't. There is not one reference in the Fox and Vision papers to Fox 1983. There's no discussion of this whatsoever. And keep in mind, Fox is not looking just at specific issue of indirect relationships. He's looking at the vector space model, including direct links and the other types of subvectors. And yes, there are use in the term subvectors, and there is use in the direct link subvector, and that somewhat would support what he's doing here. But when you drill down to specifically what the claim requires is whether the indirect relationship components are justified, what we see completely is that they're not. The experimental results don't bear that out. We don't see a use of B, C, and C, C disclosed in the later papers. In fact, in the 15 years after the Fox papers are presented, not one search engine ever used the Fox method, nor did it even use the relationships B, C, and C, C to search. There is a complete absence of any use of indirect citation relationships to enhance search for nearly 15 years after that. And then once it's later shown by a licensee of SRA, Google, that these relationships are meaningful search, it literally revolutionizes the search industry and makes Brennan Page billionaires. And then before that, Motwani and Sergey Brennan, we have quotes in our brief, explain how no one understood that citation relationships were meaningful for search and how they had stumbled on this by their analysis of direct links. So I believe that what this clearly shows is that not only did Fox experiments teach away from it, it was in fact successful, that the industry, Fox's experiments, along with the prior Salton experiments that were negative, and the subsequent Nunn experiments that were negative, and the Tapper experiments that were negative, and the Ledwith experiments that were negative in the timeline, all point to one single picture. The indirect relationships were not deemed useful under the Fox method and the then-known ways of using them. Now I also wanted to go back and finish answering the question you put forth to me because I do think it's so, so important. They also cite these quotes like, DC and CC has good behavior, CC is reasonably useful, and the clustering studies were a success. And they also point that this is substantial evidence, but again, this isn't directed to the empirical question, the claim derangement argument, that we have focused our briefing on. Okay, importantly to understand is that first off, all those statements were not about search relevance. They were in fact either about subject or length, or the clustering studies found in the other parts of the paper. Clustering is different than searching. It's for automated organization and classification. It's not necessarily for searching. So those statements are not even directed to search relevance. The only evidence is the table I showed you earlier. But more importantly, and I think this is the most important concept to get here, is if every one of those statements, every single one of them, were directed to search relevance, and they were in fact true, they would not be substantial evidence to the empirical question of the claim derangement problem. Just because BC and CC had good behavior in some search context, just because CC is reasonably useful in some search context, does not mean that it's reasonable enough or provides a benefit over just using direct relationships to search, the empirical question. And all that can be true, and they still don't provide any benefit. The only evidence anywhere in this record that anyone would have to the empirical question of whether indirect relationships provide enough benefits over direct relationships is found in the seven tests directed to that. All seven tests showed very substantial degradation of search results versus just using direct links. Therefore, one would not be motivated to perform that and practice the claim as a whole. But again, substantial evidence is one that can adequately support the conclusion. None of those statements, none of the tests that they rely on, are actually directed to whether indirect relationships could outperform direct links. The only ones directed to that issue are found on page 12 in the table I just showed you on page 12. And I also want to make one further point. In addition, another issue on page 16 of a reply brief is a non-semantic search. There is no positive search result. There is no recommendation. There is nothing in this paper that says you should only use B.C. and C.C. to search. It's not addressed by the board. It's not addressed by the petitioners. And I would urge the court to take a look at that argument as well because it has a similar problem of having no substantial evidence or explanation. Okay. We'll save the rest of your time for rebuttal. Thank you. Ms. Keefe. Thank you very much, Your Honors. I think the hardest thing here is the fact that the claims simply do not say what appellant wishes them to say. For example, Claim 26 does not say you will only use the indirect relationships in enhancing a search. It does not say there will be an empirical benefit. It simply says use direct relationships to calculate indirect relationships and then use that for a search. That's exactly what Fox did throughout all of his thesis collections and smart papers. He used indirect relationships in testing searches. And the board below found specifically that that was, in fact, useful. If we turn to JA-16, which is the board's decision, the board describes the Fox thesis as describing improving query search and document representation schemes for information retrieval. That's the board's finding as to what Fox's thesis was. The board cited to Exhibit 1009 at 261, which is JA-5510, in which Fox is describing the fact that he's trying to figure out the best ways using all of this information to improve searches or see whether or not something is going to be improved. The board goes on to say, again on JA-16, that in particular, useful types of bibliographic data are incorporated into a model to test clustering and retrieval functions coming off of searches. The board found what Fox was doing with bibliographic citations, which are indirect, to be useful. There, the board is actually citing to... Right, so this isn't quite getting to the other side's point. The other side's point isn't that maybe the board read the reference this way. The more pertinent question is, is that an unreasonable reading of the reference? And that, in their view, the only reasonable reading of the Fox papers together is a very consistent, persistent theme that you just don't get any benefit. In fact, you get degradation from using the indirect citation relationships for information retrieval searches. Absolutely not, Your Honor. In fact, a legitimate reading, as the board did below, of the papers is that when using indirect relationships, you do get improved functionality. For example, at JA5510, cross-cited in 494 at 5640, Fox talks about the fact that in the past, the Bickler and Eaton reference, something he looked at before, had used bibliographic coupling as an additive measure to searching. And when using that as an additive measure, they found that normalized totals using bibliographic coupling and co-citation performed better than when only bibliographic coupling was used in its searching. Fox says these tentative findings are supported by the more comprehensive tests in Chapter 8 below. So he's saying, yes, using BC and CC together improves the findings. It doesn't say you have to use BC and CC alone. There is nothing in the claim that says that. It simply says that using an indirect relationship may, in fact, enhance what's happening. If we go on through the remainder of the papers, at JA5605 specifically, a wrap-up of the chapter, Fox says that the preliminary tests with the two collections indicates that extended vectors may significantly aid retrieval performance in a feedback environment. Thus, the extended vector model in Chapter 6 illustrated and partially tested through clustering described in 7 now appears to be worthwhile for feedback purposes. He goes on to consistently talk about how BC and CC may increase value and actually enhance search. For example, also, on JA5603 in Table 8.13, there is a 29.7% increase in efficiency of searching when BC is added to the search parameters. Is this the 0.009 weighting? It is, but it is in fact... That's pretty tiny weighting. But it's still an indirect. It's still saying that when you use one of the indirect factors, you gain an improvement. For example, the line directly above it has only direct citations. And only direct citations, being term and link, yields only 27%. When you add in the indirect, even at 0.09 weighting, you get an improvement all the way up to 29.7. That indicates that perhaps maybe if we weighted it even higher, it might gain something even better. One of the other tables, for example, that shows a direct improvement is Table 8.11 on JA5598. In Table 8.11, we see in the bottom portion of the table that when indirect BC and CC are added, there's a 5.6% increase in the search results. When you also then add back in other directs, that's only using the indirect. So BC and CC yields 5.6. When you add everything else in, author, characterization, and direct links, it goes up to 12.1%. These are not numbers that you can just subtract one off of the other. Each one has its own additive factor. But if you look to just using indirects with term, BC and CC, there's a 5.6% improvement. The wrap-up of every single chapter has Fox saying that these extended vectors are absolutely worth looking at. The data provided is that by using, by adding BC and CC into the mix, you gain improvements. Simply saying that BC isn't as good as term, that's no great surprise. Term is a direct word. When you look for the word that's in your search and you find the word, it's going to be better than just looking for something that's in the bibliography or in a co-citation. But what the thesis was talking about was not is BC better than term. The thesis was talking about what happens when I add these elements, when I use indirect links as an additive portion of the searching that I'm doing. And in fact, when I do add in BC and CC, additive results are improved. And that's exactly what the board below found by saying and citing to the pages of the Fox thesis where the board found that in fact what Fox thesis was providing was useful and in fact a useful addition to enhance search. Citing directly to those pages, talking about how adding in BC and CC improved the results that I cited to earlier. The board therefore had sufficient evidence to find that in fact Fox did indicate that using BC and CC was a good thing and that in fact further experimentation should be done. Fox Envision specifically did use BC and CC in its documented materials and that can be found at JA12349 in which Appellant's own expert, Jacobs, admits that BC and CC were within that database. And so this is not something that was just thrown away, never used again. The thesis says continue to use it. One of ordinary skill in the art would read the conclusion of each chapter as saying that more research is warranted because this appears to yield very good results and the tables included do in fact show that. So there absolutely is substantial evidence. And the case law tells us that if there are two ways, reasonable ways, of reading the evidence involved, you must support the finding by the board below. That's in both the In Re Mutet case and the Dome Patent case at 799 F3rd 1372. Could you give me the citing end for the Jacobs declaration? It's JA, I want to make sure I got this right, 12349? That's what I thought you said. I'm sorry? Yeah, I thought that's what you said, but is that for this particular appeal? I apologize, no. It is actually for the 571 appeal. I apologize, that's a cross citation that I don't have back to the 352. That's in the 571 appendix. Please proceed. We appreciate that there's a lot of overlap in these cases, and we'll try and smooth it out as we proceed. Absolutely. So to the extent that you need to call on some of the other appeals in order to present a unified position, I think that's all right. Greatly appreciate that, Your Honor. As such, I think what we've shown is that in fact there is no teaching away. Case law is also clear that simply because a result is inferior to someone else's perception, that does not mandate a teaching away. The fact that, for example, 5.6% may seem small to some, but it is a positive result. Whether it's inferior to what someone else wanted it to be does not mean that it warrants not looking at it. Even to Your Honor's point about but it's only 0.009 weight does not mean that that is a teaching away. It's quite the opposite. It's saying I absolutely am using it, even in a small amount. Therefore, it's warranted to continue looking at it. That is something that was, in fact, useful. Since the Board found that it was useful using those pieces of information, there is sufficient evidence to support the Board's findings, and we believe, therefore, that the rejection of the claims should be affirmed. Google took a license, right? It's a litigation-inspired license. So the answer is yes, Google did take a license, but the license was only after litigation, and what the Board found below was that because this was a litigation-based license and we don't know what the reasoning was, it has virtually no weight. There is nothing in the record to show Google's source code, nothing in the record to show that Google gains any benefit from the claims or even that Google performs the claims. The simple fact that they took a license may have been simply to get rid of a lawsuit and has nothing to do with whether or not they actually practiced the claims, and there's no evidence. Did Google raise 101 for whether this was eligible for a patent in the first place? This case was prior to the Supreme Court's decisions in both Bilski and Alice, and so I don't believe... I don't know the answer, Your Honor, but it was before that, and so that issue didn't come up in the district court, to my knowledge. But certainly, if this case were ever to come back down to the district court in this case, that would be an issue that would be front and center. Is that something that we can address now? I wish that it were. I deeply wish that it were, but it is not. Well, you don't believe it is. I wish that it were. That's all I can say. Well, the competition for 101 under the Act... Correct. But that does not say anything about whether we should look at this as a quasi-jurisdictional matter. I would actually... Or the board itself, which has already declared a 101 rejection. Correct. And, in fact, here, I would very much support a 101 finding... Sorry, a finding that the subject matter here is not patentable in light of the Alice and Bilski and all progeny decisions, because here, for example, throughout the briefing, what you see is that the only thing that was claimed to have been missing was the notion of putting this on an electronic database, and the board found, rightfully, that, in fact, the documents do suggest... How do you think we could install a 101 rejection at this point in these proceedings? I'm honestly not sure that you can. I don't have specific support for the notion that you could, but when Judge Mayer asked the question about whether or not I thought 101 could come into play or it might be useful, I think absolutely it would be, but I don't have any support right now for the notion that there is a case that says you can sua sponte, pick it up. It is, however, an issue of law, and so it stands to reason that the court could pick it up as an issue of law, first impression, and render a decision to prevent a waste of court resources by having to send things back down, start over again, and then come back up. And to have to issue an advisory opinion, which, if we rule on this, is an advisory opinion. Correct. This is clearly a 101. It certainly feels that way, Your Honor. Absolutely agree with you. But as for the issue before the board, before the panel today, I do believe that the board had sufficient evidence for everything that it found, especially the notion that this document does support using indirect relationships. And because under DOME and MUTET, among others, if there are two ways to look at a document or any evidence and one supports the board's decision, you must go with the board's decision, and therefore the decision should be affirmed. If you have no other questions, thank you very much. I think we're all right on this case. We'll see what arises in the others. Thank you, Your Honor. There are very, very many overlaps for at least the beginning part of the next case as well. We will try and avoid the overlaps. Thank you, Your Honor. Okay, Mr. Hardy, you have a little rebuttal time, so let's concentrate on rebuttal of the issues that you've presented so far. Yes. Your Honor, the first thing I want to lead with is the first thing I began with earlier, and that is not one piece of evidence supports using indirect relationships when direct relationships are present. She just said there's mixed discussions where you can mixed characterize the art with respect to this issue. You cannot. There is only one set of results that are directed to that question, and that is the seven experimental results that we showed where you can compare Ellen to B.C. and C.C. Now, she went through a litany of quotes throughout her presentation that she was relying on, and every single one of those, and I invite the court to take a look at those quotes, none of those quotes would support using indirect relationships when direct relationships are present. These statements that things are good or that the vector space model is useful, none of it says to the specific arrangement of claim 26 where you have a first numerical representation of direct relationships, and then instead of using that to search, you're going to use the B.C. and C.C. Now, she attempted to confuse the issue by also saying this. What she said was the claims don't require to use B.C. and C.C. That's completely an only B.C. and C.C. That's irrelevant. What the test actually showed is whether you use B.C. and C.C. in combination of direct links or in combination with terms or combination with any subvectors, any use of B.C. and C.C. is going to harm your search results over just using direct links alone, and that is found on the seven test results that we just looked at on page 12 of the reply book. So none of that is substantial evidence, and I invite... This issue is through two more appeals. I invite them to point to one result that will actually show that indirect relationships have a benefit over direct relationships. Okay. All right. So I think we have the issues for this appeal. You can stay in place as we turn to the next case. Well, I... Are you ready? I can't turn to the next case, but I still have some more to say about... Well, you've exhausted your time. Oh, I'm out of time. I'm sorry. I'm sorry.